UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JUSTIN UNDERWOOD                                                                PETITIONER

CIVIL ACTION NO. 3:06-CV-273-DPJ

BURL CAIN, *et al.*                                                              RESPONDENTS

MEMORANDUM OPINION AND ORDER

This is a capital habeas case in which Petitioner Justin Underwood sought leave to conduct limited discovery related to a gateway actual-innocence claim. *See* Mot. [127]. The Court granted the motion in part and denied it in part. *See* Order [140]. Underwood then asked the Court to partially reconsider its decision, *see* Mot. [141], and to order the State to show cause for its failure to comply with the Court's discovery order, *see* Mot. [147]. For the reasons below, the Court sets the motion for reconsideration for oral argument. Underwood's motion to show cause [147] is granted in part and denied in part; the Court will not issue a show-cause order but will allow limited discovery.

I.   Background

On February 16, 1994, police found Virginia Harris's body in a wooded area approximately a mile and a half from her home in Flora, Mississippi. She had been shot four times. After a trial in the Circuit Court of Madison County, Mississippi, a jury convicted Justin Underwood of capital murder and found he should be sentenced to death. The evidence against Underwood included two statements in he which he confessed to stealing the murder weapon and using it to kill Mrs. Harris. Underwood's uncle had previously reported that Underwood stole his .32-caliber revolver, and he recovered it from Underwood's car before turning it over to police. A ballistics expert identified it as the gun used to kill Mrs. Harris.

The Mississippi Supreme Court affirmed the conviction and sentence. *Underwood v. State* ("*Underwood I*"), 708 So. 2d 18 (Miss. 1998). Underwood then sought post-conviction relief, but the Mississippi Supreme Court denied his petition. *Underwood v. State* ("*Underwood II*"), 919 So. 2d 931 (Miss. 2005).

After that, Underwood filed a Petition for Writ of Habeas Corpus [1] in this Court. But while the habeas petition was pending, he filed a second petition for post-conviction relief, which the Mississippi Supreme Court denied. *Underwood v. State* ("*Underwood III*"), 37 So. 3d 10, 11 (Miss. 2010). Underwood eventually filed a third post-conviction petition, and this Court stayed the habeas case. The Mississippi Supreme Court also denied Underwood's third post-conviction petition, *see* En Banc Order [125-1], *Underwood v. State* ("*Underwood IV*"), No. 2015-DR-01378-SCT (Miss. Dec. 16, 2021), and this Court lifted the stay [104].

After that, Underwood filed a Motion for Discovery [108] and a Supplemental Motion for Discovery and to Amend Briefing Schedule [111] seeking discovery related to a gateway actual-innocence claim. The Court denied those motions without prejudice after concluding that Underwood should first amend his Petition for Writ of Habeas Corpus to (1) include factual allegations supporting the actual-innocence claim, (2) identify the defaulted constitutional claims to which the actual-innocence gateway would apply, and (3) explain how factual development would resurrect those claims. Order [120].

On March 23, 2023, Underwood filed his "Third Amended Petition for Writ of Habeas Corpus" [125] (actually second amended), and, on April 13, 2023, he filed another motion for discovery [127]. The Court granted Underwood's request to conduct DNA testing and fingerprint analysis of physical evidence in the State's custody, but it denied the motion in all

other respects, including Underwood's request to have his own expert test the murder weapon and bullets retrieved from the victim's body. *See* Order [140] at 11–12, 22.

On October 16, 2024, Underwood filed a Motion for Partial Reconsideration [141] of the Court's Order [140], asking the Court to vacate the holding denying his request to have his own expert conduct ballistics testing. Later, Underwood filed a Motion to Show Cause or, Alternatively, for Limited Discovery [147], in which he accused Respondents of failing to make the DNA and fingerprint evidence available to him for testing. He requested that the Court direct Respondents to show cause for violating the Court's Order [140] or, alternatively, authorize him to conduct limited discovery targeting possible custodians of the evidence.

II.     Motion for Partial Reconsideration [141]

After considerable effort, the Court concludes that oral argument is necessary before ruling on the motion for reconsideration. This Order will clear up one dispute over the original Order and then outline the questions it will ask during the hearing.

       1.     Which Standards did this Court Apply to the State-Court Rulings?

The parties can't tell which standard the Court applied to the Mississippi Supreme Court's ruling regarding ballistic testing. The two possible options are found in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under § 2254(d)(1) of that act,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). AEDPA also provides deference to fact findings under § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Unlike § 2254(d), no adjudication on the merits is needed for § 2254(e)(1) to apply." *Murphy v. Davis*, 901 F.3d 578, 595 (5th Cir. 2018).

The Court block quoted § 2254(e)(1) in the "standards" section of the disputed Order. Order [140] at 4–5. It then noted that the Mississippi Supreme Court addressed Underwood's actual-innocence claim, "[t]herefore, the Court presumes that any factual findings supporting the Mississippi Supreme Court's analysis were correct, and Underwood must rebut that presumption by clear and convincing evidence." *Id.* at 5 (citing 28 U.S.C. § 2254(e)(1)).

Underwood says the Court limited that deference to the Mississippi Supreme Court's actual-innocence finding. Pet'r's Reply [146] at 4. But the final paragraph of the "standards" section summarized the standards the Court would apply when considering the requested discovery. That paragraph ended by noting Underwood's duty to "rebut[] any *factual findings* the Mississippi Supreme Court previously made by clear and convincing evidence, 28 U.S.C. § 2254(e)(1)." Order [140] at 5 (emphasis added).

One factual finding to which the Court applied § 2254(e)(1) was the state-court's conclusion "that Underwood could have sought this evidence before trial." *Id.* at 12; *see Underwood IV* [108-56] at 11 (noting that "the time for the defense to have tested the weapon was before trial"). The Court found that Underwood "ha[d] not rebutted that finding." Order [140] at 12. The Court then concluded that the evidence would not be new, so it wasn't discoverable "under Rule 6." *Id.*

4

Despite that analysis, the Court confused the issue by observing Respondents' footnote referencing § 2254(d)(2). *Id.* at 11. While the Court noted Respondents' argument, it neither explored nor endorsed it. And, as noted in the "standards" section, it instead applied § 2254(e)(1) to "any factual findings the Mississippi Supreme Court previously made." *Id.* at 5 (citing 28 U.S.C. § 2254(e)(1)). At bottom, the Court relied on § 2254(e)(1), not § 2254(d)(2).

2.  Oral Argument

The parties must prepare for these questions:[1]

**Which holdings by the Mississippi Supreme Court are entitled to AEDPA deference and under which provisions?** This includes whether the state-court's no-new-evidence finding is a mixed question and, if so, how it should be reviewed. *See Neal v. Vannoy*, 78 F.4th 775, 786 (5th Cir. 2023).

**What constitutes "new" evidence?** "The Supreme Court has not explicitly defined what constitutes 'new reliable evidence' under the *Schlup* actual-innocence standard, and there is a circuit split." *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) (examining *Schlup v. Delo*, 513 U.S. 298 (1995)). "The nature of the split over 'new' is based on whether the evidence must be 'newly discovered' or 'newly presented.'" *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018); *see also Wolfe v. Dotson*, 144 F.4th 218, 234 (4th Cir. 2025) (recognizing circuit split).

The dispute is somewhat understandable. In *Schlup*, the Supreme Court stated that when assessing whether a petitioner established actual innocence, "the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence'

---

[1] This Order may be odd in that it discusses the legal issues without making any conclusions. The Court's goal is to highlight what it has seen so far so the parties will be better prepared to address the Court's concerns. These observations are not holdings, and the Court welcomes the parties' insights.

5

allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or *unavailable* at trial." 513 U.S. at 327–28 (emphasis added). Later, the Court said district courts make this call "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become *available only after the trial*." *Id.* at 328 (emphasis added) (quoting Friendly*, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court never defined "new evidence" nor what it means to be "available only after the trial," but this language could suggest a newly discovered standard. *Id.*

Factually though, the *Schlup* Court considered two affidavits the petitioner generated after trial, one of which came from a trial witness—i.e., a witness known to the defense. *Id.* at 311–12; *see id.* at 312 n.25. The Court found that the statements "cast doubt on whether Schlup could have participated in the murder." *Id.* at 331. It also acknowledged that the "new statements" might be unreliable—which is part of the *Schlup* Court's actual-innocence equation—but concluded that if reliable, "it surely cannot be said that a juror, conscientiously following the judge's instructions requiring proof beyond a reasonable doubt, would vote to convict." *Id.* In other words, the district court considering whether Schlup established actual innocence would consider the "new statements." *Id.*

After *Schlup*, the newly presented evidence standard was adopted in the Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits and rejected in the Third and Eight Circuits. *See Fontenot v. Crow*, 4 F.4th 982, 1032 (10th Cir. 2021) (discussing circuit split); *see also Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) (adopting "newly presented" standard). The Eleventh Circuit has so far avoided the question. *See Stimpson v. Warden*, No. 22-10190, 2025 WL

6

484049, at *4 (11th Cir. Feb. 13, 2025) (declining to adopt a standard and noting that petitioner failed to prove actual innocence even under approach that would allow court to "consider all evidence, available and unavailable at trial").

Like the Eleventh Circuit, the Fifth Circuit has declined invitations to pick a side. It did consider *Schulp* in *Hancock* and appeared to track the newly discovered standard. 906 F.3d at 389. The court held, "Evidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" *Id.* at 390 (quoting *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008)).

That sounds like a newly discovered standard, but Hancock supported his actual-innocence argument with affidavits collected *before* trial. *Id.* Thus, the evidence was in his hands. And for that reason, the Fifth Circuit stated that it was not "require[d]" to "weigh in on the circuit split." *Id.* at 389–90. The same thing happened in *Fratta*, when the petitioner relied on a ballistics report that he possessed (and tried to introduce) during his second trial. 889 F.3d at 232. The Fifth Circuit again noted the circuit split but declined to pick a side. *Id.*

In sum, the Fifth Circuit appears to have applied a newly discovered standard but has expressly said it has not decided the issue. It also appears that *Hancock* and *Fratta* are distinguishable from Underwood's case because the proffered evidence existed before trial. By contrast, the evidence Underwood hopes to develop did not exist at trial, but he arguably could have generated it with reasonable investigation. Given all that, should this Court revisit whether to apply the newly discovered evidence or the newly presented evidence standard? If so, which standard should be adopted?

**Would the evidence be new?** Even without deference to the Mississippi Supreme Court, Underwood's argument focuses on recent reports suggesting that experts cannot match a specific

7

firearm to a specific projectile.  But if the *Hancock* standard applies, would new testing observe anything that could not have been observed in 1994?  Underwood says the examination would be "fundamentally different from a defense examination in 1994," noting next as an example that "Mr. Byrd 'did not evaluate the evidence for subclass characteristics.'"  Pet'r's Mem. [142] at 8.  But according to Underwood's Third Amended Petition (TAP), the Association of Firearm and Toolmark Examiners (AFTE) "has warned, since 1992, [that 'c]aution should be exercised in distinguishing subclass characteristics from INDIVIDUAL CHARACERISTICS.'"  TAP [125] at 50.  So, are there any changes in the testing or would the new studies merely mean that the observations would now be recorded or interpreted differently?  If the latter, then is this new?

***Does presenting "some" new and reliable evidence open the door for discovery?***  In *House v. Bell*, the Supreme Court summarized *Schulp*.  547 U.S. 518, 536–37 (2006).  The Court first noted that "House . . . presented some new reliable evidence" and then observed:  "*Schlup* makes plain that the habeas court must consider 'all the evidence,' *old and new*, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'"  547 U.S. at 538 (emphasis added).

The Fifth Circuit has quoted this language in cases like *Reed v. Stephens*, noting that to prove actual innocence, the petitioner

> must "establish through new and reliable evidence that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (internal quotation marks and citation omitted).  This evidence may include "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).  But "the habeas court's analysis is not limited to such evidence." *House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Rather, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* at 538, 126 S. Ct. 2064 (internal quotation marks and citation omitted).

739 F.3d 753, 767 (5th Cir. 2014).

Underwood argues that he has presented some new and reliable evidence, so, under *House*, he is entitled to test the firearm even if the results would be considered old evidence—i.e., not new under *Schlup*. Pet'r's Reply [146] at 8. But it remains unclear whether *House* means a petitioner with some new and reliable evidence can then seek and rely on evidence that is not "new." As stated in *Reed*, actual innocence must be "establish[ed] through new and reliable evidence." 739 F.3d at 767.

Perhaps that question depends on what the *House* Court meant when it said courts must consider "old and new" evidence. 547 U.S. at 538. *House* adds the phrase "old and new" to this statement from *Schlup*: "The habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" 513 U.S. at 328 (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)); *see also House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–28).

*Schlup* could mean courts must consider the new evidence against the trial evidence, including evidence wrongfully excluded from the trial. The Eleventh Circuit suggested this view in *Whittaker v. Secretary, Florida Department of Corrections*:

> If new evidence exists, the reviewing court must assess the probative force of the new evidence "in connection with the evidence of [the petitioner's] guilt adduced at trial." *Schlup*, 513 U.S. at 331–32. Put another way, the habeas court must consider all the evidence, old and new, to "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329).

9

No. 22-13562, 2024 WL 4100613, at *1 (11th Cir. Sept. 6, 2024); *see also Parker v. Bickham*, No. CV 22-4345, 2023 WL 11884755, at *6 (E.D. La. May 17, 2023), *report and recommendation adopted*, 2025 WL 2337138 (E.D. La. Aug. 13, 2025) (noting that based on *House*, "courts often begin by examining the evidence presented at trial").

So, does *House* mean the Court must allow evidence that would not satisfy the new-and-reliable-evidence test if some other new-and-reliable evidence exists? And could the Court find for Underwood based on old evidence?

**Should the Court certify any ruling for interlocutory appeal?** "Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed." *Allen v. Okam Holdings, Inc.,* 116 F.3d 153, 154 (5th Cir. 1997). Under 28 U.S.C. § 1292(b), district judges may certify an interlocutory appeal when they are "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The definition of "new evidence" has generated a circuit split—differences of opinion therefore exist. The Court also finds that construing *House* presents an issue for which reasonable minds could disagree. Those issues could impact not only discovery but also the evidence the Court may consider when ultimately deciding whether Underwood has established actual innocence. Answers would therefore advance the ultimate resolution of the litigation.

   3.  Instructions

The parties must contact Courtroom Deputy Shone Powell within one week of this order to set oral argument. Given the number of attorneys, the Court will require the presence of only those making the argument and local counsel. The parties are also instructed to provide the

Court (and each other) a list of any new authority they intend to argue at the hearing no later than one calendar week before the hearing date. The list of authorities should include brief parentheticals explaining the relevance.

III.   Motion to Show Cause or, Alternatively, for Limited Discovery [147]

In its previous order, the Court granted Underwood's request to conduct DNA testing on physical evidence that officers collected during their investigation, including fingernail scrapings from the victim, hair/fiber from a gum wrapper found in the victim's car, and a cigarette butt found at the victim's garage entrance. Order [140] at 16–18. The Court also granted Underwood's request for the fingerprints officers collected from the victim's car. *Id.* He wants to run the fingerprints and DNA test results against law-enforcement databases. Mot. for Disc. [127] at 3.

After the Court entered the discovery Order, Underwood's counsel asked Respondents' counsel where and when they could pick up the physical evidence. E-mail [147-1] at 2. Respondents' counsel checked with the last-known custodians of the items—the Madison County Sheriff's Department and Madison County Coroner's Office—who responded that they did not possess them. *Id.* at 1; Chapman E-mail [152-1]; Breeland E-mail [152-2]. Respondents' counsel relayed this information to Underwood's counsel and advised them to direct further questions directly to the Mississippi Forensics Laboratory, Madison County Sheriff's Department, and Madison County Coroner. E-mail [147-1] at 1.

Underwood then filed a Motion for an Order to Show Cause or, Alternatively, Limited Discovery [147], arguing that Respondents failed to comply with the Court's Order [140]. He contends that they should have provided additional information regarding the extent of the agencies' searches for the physical evidence, their evidence retention policies, and similar

information that could assist him in locating the evidence. Mem. [149] at 3, 6. Thus, he asks the Court to direct Respondents to show cause why they have not complied with the Order [140] or, alternatively, authorize him to propound targeted discovery requests to the possible evidence custodians to help locate the evidence. *Id.* at 8–12.

Respondents—Mississippi's Attorney General, Corrections Commissioner, and State Penitentiary Superintendent—argue that they have never possessed the physical evidence subject to the Court's Order [140]. Mem. in Response [152] at 2. Their counsel examined the crime lab release forms, contacted the last-known custodians of the evidence, and requested that they make the items available to Underwood's counsel. *Id.* at 2; Chapman E-mail [152-1]; Breeland E-Mail [152-2]. Michael Chapman, an Investigator with the Madison County Sheriff's Department (MCSD), and Alex Breeland, the Madison County Coroner (MCC), each executed an affidavit stating that they searched their respective offices in response to the inquiry but were unable to find the physical evidence. Chapman Aff. [152-3]; Breeland Aff. [152-4].

The Court first finds that a show-cause order is unwarranted. Underwood's motion seeks "access to and ability to move" certain evidence including the physical evidence addressed in this motion. Pet'r's Mot. [127] at 1. The Court's Order [140] granted that request and allowed him to test the evidence, but it did not expressly instruct Respondents to do anything. Sanctions would not be appropriate.

That said, Underwood alternatively seeks limited discovery, targeted to reveal additional information about the location or disposition of the evidence. That request is granted. Underwood believes "[a]ppropriate discovery" includes "(1) serving limited document requests, and (2) taking Rule 30(b)(6) depositions of the likely custodians. Mem. [149] at 10. Both Chapman and Breeland have submitted affidavits attesting that the evidence cannot be located.

The Court agrees that Underwood should be able to explore further, to include documentation explaining the evidence-retention and disposal policies of these agencies, documentation as to the specific disposition of this evidence, and deposition testimony.

To avoid a fishing expedition, the targeted written discovery may include interrogatories limited to ten succinct questions and requests for production limited to ten succinct questions. Depositions are limited to any custodians identified in the written discovery and Rule 30(b)(6) depositions of MCSD and MCC. The Rule 30(b)(6) notices must describe no more than five "matters for examination" with reasonable particularity. Fed. R. Civ. Pro. 30(b)(6). The parties should endeavor to have this discovery concluded within 90 days.

IV.     Conclusion

The Court has considered all arguments. Those that were not addressed in this Order would not change the results. For the stated reasons, the Court **defers** ruling on Petitioner's Motion for Partial Reconsideration [141] and will set it for oral argument. The Court **grants in part and denies in part** his Motion to Show Cause or, Alternatively, for Limited Discovery [147].

**SO ORDERED AND ADJUDGED** this the 30th day of September, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE